**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**REBECCA SNOEYENBOS,**
    **Plaintiff,**

v.                                                             Case No. 3:19cv377

**MARCIA CURTIS, Deputy Sheriff of
Spotsylvania County, in Her Personal Capacity,**
    **Defendant.**

**PLAINTIFF'S FRCP 26(a)(2)(C) DISCLOSURE**

Comes now the Plaintiff, by counsel, and makes the following disclosure under Federal Rule of Civil Procedure 26(a)(2)(C).

1. Cynthia G. Repanshek, Psy.D.
   404 Chatham Square Office Park
   Fredericksburg, VA 22405

Cynthia G. Repanshek has not been retained or specifically employed to provide expert testimony in this case, and is not an employee of the Plaintiff. As such, she is not an expert that requires a report under Federal Rule of Civil Procedure 26(a)(2)(B). The following summary of the subject matters on which she is expected to present evidence and summary of the facts and opinions to which the witness is expected to testify is provided under Federal Rule of Civil Procedure 26(a)(2)(C).

Dr. Repanshek is expected to testify on the following subjects: Her credentials; her treatment of the Plaintiff as a licensed clinical psychologist; her records of the therapy; the expected course of treatment and treatment plan moving forward; the cost, reasonableness, necessity, and causal connection of the treatment and the underlying mental health injuries to the conduct of the Defendant; the progress of the Plaintiff; the mental diagnosis(es) of the Plaintiff related to the incidents involved in this lawsuit, including a detailed explanation; the clinically

1

significant symptoms she witnessed and those reported to her; the causation of the symptoms as determined in the course of the treatment; the opinion she has formed as to the reasons and causes of the Plaintiff's behaviors as reported to her from a mental health perspective; her treatment methods and the reasons and theories of these treatment methods; the nature and pathology of the clinically significant symptoms.

A summary of the facts and opinions expected is as follows: Dr. Repanshek is expected to testify as to her education, experience, and other credentials. She is expected to explain her education, experience, and credentials in terms the jury can understand. She will testify that she Virginia licensed clinical psychologist, and she will explain what this allows her to do, and what her role and purpose is as a clinical psychologist. A copy of her CV has been provided in discovery (Bates 308-311) and is incorporated here by reference. Any opinions she provides will be limited to those opinions she holds to a reasonable degree of professional certainty. She is expected to testify as to the authenticity of her treatment notes, and explain the purpose of the notes in the course of therapy, and what she records and omits from the notes. The notes have been, and will continue to be, provided in discovery as they come into the Plaintiff's possession.

Dr. Repanshek is expected to testify that she began treatment of the Plaintiff by an intake on July 15, 2019. She collected a history from the Plaintiff. The Plaintiff has described the events concerning the 2019 reckless driving citation, including the bribe offered by the Defendant, as reflected in Bates 261. Dr. Repanshek will testify that she diagnosed the Plaintiff as suffering from Adjustment Disorder, With Anxiety.

Dr. Repanshek is expected to explain that Adjustment Disorder, With Anxiety is a trauma- and stressor-related disorder. This is a class of disorders arising from traumatic or stressful events or circumstances, where the experience of the trauma or stressor is part of the

diagnostic criteria. The diagnostic criteria for Adjustment Disorder, With Anxiety, according to the DSM-5 (which Dr. Repanshek is expected to explain) are:

    a. **The development of emotional or behavioral symptoms in response to an identifiable stressor(s) occurring within 3 months of the onset of the stressor(s).** – Dr. Repanshek is expected to explain that this does not require the condition to be diagnosed within three months of the stressor. It merely requires the symptoms to develop within the three-month period. Based on the information provided from Plaintiff, this criterion has been met. Dr. Repanshek is expected to explain the a "stressor" as a broad concept to describe any particular set or category of circumstances producing stress for an individual, whether in an isolated incident, collection of related events, or serial incidents. In this case, Dr. Repanshek is expected to explain that the stressor or trauma was receiving the reckless driving citation under circumstances that appeared suspicious to the Plaintiff, as though she was targeted, and later in learning that the Defendant had actually offered the officer on the scene a lunch to ticket the Plaintiff because of the prior complaints the Plaintiff made about the Defendant related to the parking ticket incident from six years before.

    b. **The emotional or behavioral symptoms must produce either or both of (1) marked distress that is out of proportion to the severity or intensity of the stressor, and (2) significant impairment in social, occupational, or other important areas of functioning.** – Dr. Repanshek is expected to explain the Plaintiff was experiencing a significant impairment in social, occupational, or other important areas of functioning. Dr. Repanshek is expected to explain that this was evident in the regular incidents of intense anxiety the Plaintiff reported in connection with driving,

interactions with police, concerns about safety of herself and her family and propery, etc., which adversely affected her sleeping behaviors and patterns, caused conflict in her relations, significantly impaired her willingness and ability to focus on her daily activities, etc. Dr. Repanshek is expected to testify that these reports were consistent with her observations of the Plaintiff during the therapy, and with her training and experience, so that she found them to be believable. Dr. Repanshek may also testify whether she believes the distress was out of proportion to the severity or intensity of the stressor, and the grounds for that opinion,

c. **The stress-related disturbance does not meet the criteria for another mental disorder and is not merely an exacerbation of a preexisting mental disorder –** Dr. Repanshek is expected to testify as to what, if any, other mental disorders she considered. It is expected that Dr. Repanshek may testify that she did not believe this met the criteria for post-traumatic stress disorder, which requires a more severe stressor than present in this case. Dr. Repanshek may testify that she did not believe this met the criteria for a depression disorder, because the hypervigilance and frequent thoughts of risks present in this case are not consistent with or accounted for by depression, and the indications that this arose from a particular stressor. Dr. Repanshek may testify that this diagnosis is or was better, at the time, than diagnoses such as Generalized Anxiety or Obsessive-Compulsive Disorder, because it appears to arise from and be focused on a particular stressor-related to the events surrounding the 2019 citation. Additionally, Generalized Anxiety Disorder requires the excessive anxiety to occur more days than not for six months, and symptoms had not persisted for six months at the time of the diagnosis. Dr. Repanshek may testify, however, that

  conditions such as PTSD, Generalized Anxiety Disorder, or Obsessive-Compulsive Disorder have diagnostic criteria that partially overlap Adjustment Disorder, With Anxiety, and the treatment she is providing is appropriate for the symptoms that are at issue, regardless of the particular label, and she is confident the symptoms she is treating were caused by the incidents surrounding the 2019 ticket.

d. **The symptoms do not represent normal bereavement** – Dr. Repanshek is expected to testify these symptoms are both more severe and have a different focus than normal bereavement. Additionally, the stressor at issue is not the sort that would be expected to produce bereavement.

e. **"With Anxiety" means that nervousness, worry, jitteriness, or separation anxiety predominate** – Dr. Repanshek is expected to testify that she detected indications of nervousness, worry, and jitteriness are predominant.

Dr. Repanshek is expected to testify that the ordinary Adjustment Disorder diagnosis (313.89 (F94.1)) has the additional component that the symptoms do not persist for an additional six months after the stressor is removed. The DMS-5, however, also identifies adjustment-like disorder with a prolonged duration of more than 6 months without prolonged duration of the stressor (see 309.89 (F43.8)). At the time that Dr. Repanshek diagnosed the Plaintiff, it was approximately six months after the traffic stop, and less than that after the Plaintiff learned of the Defendant's conduct in relation to traffic stop. Dr. Repanshek is expected to testify that the Adjustment Disorder diagnosis was appropriate at the time. Dr. Repanshek is expected to testify that her practice is to formally reevaluate the diagnosis and care plan after six months. At the time of this disclosure, that reevaluation has not occurred.

Dr. Repanshek is expected to explain her methods of diagnosis. Dr. Repanshek is expected to explain that she considered the information she had to be sufficient in scope and reliability to make the diagnosis she made, according to the standards of the profession.

She is expected to explain that they established two objectives of the therapy in July 2019, with an estimated completion date of six months. The first goal was to reduce the overall frequency, intensity, and duration of anxiety so that daily function is not impaired; to enhance the Plaintiff's ability to effectively cope with the full variety of life's anxieties; to learn and implement calming skills to replace overall anxiety and manage anxiety symptoms; and to identify, challenge, and replace biased, fearful self-talk with positive, realistic and empowering self-talk. The second goal was to restore a restful sleep pattern; to terminate anxiety-producing dreams that cause awakening; to learn and to implement stimulus control strategies to a consistent sleep-wake rhythm; to practice good sleep hygiene; to learn and implement calming skills for use at bedtime. She will explain these objectives and the reasons for pursuing these objectives. She is expected to explain how and whether these goals and estimated completion date have been accomplished or modified, and the basis of the conclusions.

Dr. Repanshek is expected to explain that the anxiety the Plaintiff is experiencing is a set of interrelated psychological, physiological, and neurological responses accompanying the perception of an imminent or unfolding event, or a prospective event, in which the person perceives the event's outcome or consequence as uncertain and potential adverse, and often with a perceived lack of ability to control the outcome or its consequence. The Plaintiff is experiencing these psychological, physiological, and neurological responses in a heightened way. Dr. Repanshek is expected to explain these psychological, physiological, and neurological symptoms, how they are experienced, and how they interact, both in the particular instance and

serially. She is expected to explain that a patient, like the Plaintiff, who has other medical conditions that mimic the physiological indicators of anxiety (such as high blood pressure in this case) often find it more difficult to manage the psychological dimensions of anxiety, because the experience of the physiological condition is interpreted as, and functionally contributes to, the perception of present anxiety, which undermines the sense of control, thereby creating and exacerbates anxiety. She is expected to explain that the psychological, physiological, and neurological responses may vary by degree, affect, and effects, but the Plaintiff was experiencing symptoms of anxiety that were significantly impairing her ability to engage in daily activities. Severe anxiety can be managed and reduced through various strategies, but it takes time, and often the help of a professional, to learn the strategies and to be coached to successfully implement them. Additionally, therapy is useful for determining what strategies to implement in the specific case, based on the circumstances and the psychological causes of the anxiety. She will explain some common misperceptions about anxiety and its management or treatment.

Dr. Repanshek is expected to explain that when anxiety originates from a trauma or stressor, which is the case with Adjustment Disorder, With Anxiety, the anxiety often manifests with the patient seeing connections, relationship, and causes that are implausible, and which may not be real. Dr. Repanshek is expected to explain that humans ordinarily narrate or explain the world by making connections in their experience and by inferring intent and purpose of others by observing and reflecting on another's conduct. Anxiety as a result of trauma may distort the person's ability to draw reasoned conclusions or inferences in matters that the person associates with the trauma or stressor. This can affect the person's present recollection and description of past events, present events, and future possibilities. This may lead a person, for instance, to speak and to believe of possible conspiracies against, to engage behaviors that are designed to control

or reduce perceived risks. These perceptions are a symptom of the underlying trauma. Dr. Repanshek is expected to explain that Ms. Snoeyenbos is exhibiting these behaviors, and they are evidence that this is trauma-induced anxiety arising from the events related to this 2019 traffic stop. Dr. Repanshek is expected to explain that Ms. Snoeyenbos's perception of such past, present, or future events, even if implausible and erroneous, are likely sincerely believed and are a result of the trauma the Plaintiff experience in connection with the 2019 traffic stop. This often prevents the patient from being able to confidently identify a single traumatic event, because they are inclined to connect the true stressor without other earlier or later events. Dr. Repanshek is expected to explain that her recorded notes that the Plaintiff reported these beliefs are not intended to reflect a judgment that the statements are true, but that they may be clinically significant in evaluating the case. Dr. Repanshek is expected to explain that the Plaintiff's description of prior incidents, and her belief that others may have been involved or responsible for the events that have happened in the past, are consistent with a Adjustment Disorder, With Anxiety, with the trauma or stressor of the 2019 traffic stop being the cause. Moreover, the Plaintiff's ability to identify the course of severe anxiety as beginning in the period after the 2019 traffic stop indicates that this was the traumatic event or stressor giving rise to the condition.

    Dr. Repanshek is expected to explain that patients that have experienced trauma,and are suffering mental health symptoms from it, will often delay professional counseling for some time after the symptoms manifest, until they determine that they are not getting better on their own and need therapy. As such, the delay in getting treatment did not seem significant in this case.

    Dr. Repanshek is expected to explain that people deal with traumatic events in different ways. Characterizing the person's response to the event as unreasonable or the like does not

change the fact that the response exists and the response was caused by the trauma. The disproportionate nature of the response is one of the diagnostic criteria of this diagnosis. In other words, the mental health profession recognizes that traumatic and stressful events can cause severe or disproportionate psychological harm to the person. A person that experiences trauma makes connections in a different way than others, perceiving risks and dangers where others do not. This is similar to a traumatic war veteran that experiences fear and anxiety at a children's party, even though it is completely safe.

      Dr. Repanshek is expected to explain that treatment of severe anxiety through therapy is appropriate for several reasons. Severe untreated anxiety can have physical effects on the brain, where the anxious response becomes increasingly hardwired. Additionally, the anxiety may adversely affect the person's wellbeing, behavior, and good personal relationships in several ways. The stress caused by anxiety can also cause physical health problems. Anxiety can have a snowball effect, as the person develops anxiety about becoming increasingly prone to anxiety or subject to more severe anxiety.

      Dr. Repanshek is expected to explain that treatment for sleeplessness cause by anxiety is appropriate for several reasons. Lack of restful sleep can cause or contribute to numerous physical health concerns. It quickly adversely affects a person's wellbeing, their ability to engage safely and competently in daily activities, and relationships. It can make the person more vulnerable to further anxiety and less able to engage the therapeutic behaviors to reduce anxiety or its effects. Lack of restful sleep can therefore amplify anxiety and other adverse psychological states, and can create new mental health issues. Further, disrupted sleep that the person attributes to anxiety becomes both a reminder of the anxiety and a proxy the person may use to gauge their present anxiety. As such, deterioration of sleep patterns serves as a sign to the person that the

anxiety is persisting or worsening, which can heighten the anxiety and sleeplessness. This is especially the case when anxiety-producing dreams are present. Anxiety about sleeplessness can also escalate the sleeplessness, creating an anxiety-sleeplessness feedback loop. Targeting the sleeplessness can turn this cycle into a positive feedback loop. As restful sleep patterns return, it becomes a favorable sign that the anxiety under better control, and this perception of control can empower the person to better manage their anxiety.

Dr. Repanshek is expected to explain the treatment strategies and interventions used, including cognitive challenging, cognitive refocusing, cognitive reframing, exploration of coping patterns, exploration of emotions, exploration of relationship patterns, guided imagery, mindfulness training, meditation, relaxation and deep breathing, structure problem solving, supportive reflection, symptom management, psycho-education, and cognitive processing therapy.

Dr. Repanshek is expected to testify that a particular source of the Plaintiff's anxiety appears to be the loss of a sense of safety in the community in which she was raised and has lived. The Plaintiff has developed a fear of police generally, but particularly within Spotsylvania County. The fact that she reports feeling generally (but not entirely) relieved from these anxieties on vacation out of the state, but having the anxieties return after returning to the county, further supports the conclusion that this was a trauma or stressor related health condition focused on police interaction in Spotsylvania County.

Dr. Repanshek is expected to testify that another particular source of the anxiety appears to stem from the disparity between the Plaintiff's beliefs and expectations prior to the incidents involving the 2019 citation and her perceptions after the citation. Adjustment Disorder, With Anxiety is often produced when a person's system of personal beliefs is challenged by a

particular stressful or traumatic experience or set of experiences. In this case, the Plaintiff had a clean driving record and received only the fire lane parking ticket. It appears that she had a perception that the law enforcement system was generally fair, and so the punishment of people by the system was generally reliable. She was emotional attached to this idea that the system was fair. She generally attributed her clean driving record and lack of a criminal record to the fact that she was a good person that respected the law. She placed substantial emotional value in her perception that she was a law abiding and good person. Receiving a misdemeanor citation for passing a school bus, where the officer issuing the citation was offered lunch to ticket the Plaintiff as a result of Facebook posts and citizen complaints, has therefore required the Plaintiff to adjust her perceptions: she is being forced to surrender her perception that she can be safe from adverse police action, because she sees through experience that she can make mistakes that may merit a criminal prosecution, and more importantly, she now knows that she is vulnerable to police misconduct. The disruption of strongly felt values is leaving her with little emotional guidance as to how to conduct her life and respond to cues in her memory, environment, and imagination, creating the conditions for anxiety the associated sleeplessness to emerge.

Dr. Repanshek is expected to testify that the therapy so far has been weekly, subject to the parties' availability at a rate of $140 for the intake and $125 for the regular appointments. She will provide an evaluation of how long the therapy is expected to continue. Based on the initial evaluation of six months, the expected cost would be approximately $3,265 (25 visits x $125 + 1 visit x $140).

The therapy continues, and Dr. Repanshek is expected to testify with all of the information available to her at the time. While this disclosure represents the expected testimony available at this time, it is subject to change as therapy continues, and with the result of the

11

neuropsychological testing that Dr. Repanshek anticipates reviewing and potentially incorporating into her perception of the case and course of care.

  2. **Andrew Flusche, Esq.**
    **10691 Spotsylvania Ave**
    **Fredericksburg, VA 22408**
    **(540) 318-5824**

Andrew Flusche, Esq. has not been retained or specifically employed to provide expert testimony in this case, and is not an employee of the Plaintiff. As such, he is not an expert that requires a report under Federal Rule of Civil Procedure 26(a)(2)(B). The following summary of the subject matters on which she is expected to present evidence and summary of the facts and opinions to which the witness is expected to testify is provided under Federal Rule of Civil Procedure 26(a)(2)(C).

Mr. Flusche is expected to testify on the following subjects: His credentials; the course of his representation of Ms. Snoeyenbos, including his observations, his strategies in representing her, her reported state of mind, the events of the representation, and the outcome of the criminal case. He is expected to testify concerning the opinions he formed and actions he took based on opinions, including opinions based on Virginia Code §§ 46.2-859, 46.2-869, 18.2-438, 18.2-447, and associated statutes and case law.

A summary of the facts and opinions expected is as follows: Mr. Flusche is expected to testify as to his credentials. He is a licensed Virginia Attorney, and a graduate of the University of Virginia School of Law (2007). He specializes in traffic and misdemeanor drug defense in Spotsylvania and the surrounding counties. He has often represented individuals charged with violations of Virginia Code § 46.2-859, and he self-published a book *Fight Your Virginia Reckless Driving Ticket*. He has presented continuing legal education courses, including for the Virginia Association of Criminal Defense Lawyers.

Mr. Flusche is expected to testify that he was contacted by Ms. Snoeyenbos to represent her in connection with the reckless driving citation for allegedly violating Virginia Code §§ 46.2-859. From the beginning of the representation, Ms. Snoeyenbos communicated that she believed that she had been targeted for selective enforcement, and that the reason for the selective enforcement related to a 2013 parking ticket and her complaints about that ticket. Mr. Flusche is expected to testify that he did not believe this was plausible, and that it was more likely that she had simply passed a school bus and was properly cited for passing the school bus.

Mr. Flusche is expected to testify, however, that he determined that she may not be guilty of reckless driving, based on the information she provided and his knowledge of the applicable law. In particular, Mr. Flusche is expected to testify that he believed the judge would either choose not to convict her of any offense, or to convict her of improper driving under Virginia Code § 46.2-869 based on the circumstances, her account that she did not see the bus due to the traffic until after she was in the process of passing it, and her otherwise spotless driving record. Mr. Flusche is expected to explain the relationship between Code §§ 46.2-859 and Code § 46.2-869. Most significantly, he will explain an officer is not permitted to issue a citation for a violation of Code § 46.2-869, but any reckless driving citation may lead to a conviction for improper driving under Code § 46.2-869 instead of reckless driving "where the degree of culpability is slight." The judge has discretion to convict a person of improper driving even if they are formally charged with reckless driving, and a prosecutor has discretion to reduce a reckless driving charge to improper driving at any time in the proceeding prior to the court's decision. Improper driving is a traffic infraction, like speeding (less than 20 mph over) or failure to obey a highway sign, rather than a criminal misdemeanor offense. Improper driving is punishable by a fine of not more than $500, no jail time, and fewer points against the license, and

no suspension of license. Reckless driving is punishable by up to a year in jail and a fine of up to $2,500. Mr. Flusche will testify that it was his strategy, based on the information he initially had, to avoid a reckless driving conviction and secure either no conviction or an improper driving conviction, by a presentation of the facts and the evidence mitigation culpability and showing a good driving history.

    Mr. Flusche is expected to testify that he requested any video footage of the traffic stop from the Sheriff's office and received a copy of Deputy Riley's body camera footage. Mr. Flusche is expected to testify that he knows both Deputy Riley and Deputy Curtis from previous and subsequent cases. Mr. Flusche is expected to testify that he reviewed the portion of the video footage related to the traffic stop of his client. Mr. Flusche is expected to testify that he disclosed the contents of the video to the Plaintiff, and he is expected to testify as to her reaction to that news. Mr. Flusche is expected to testify that, upon review of Virginia Code §§ 18.2-438 and 18.2-447, he determined that Deputy Curtis's conduct likely constituted a violation of one or both of those sections, and therefore constitute a felony under Virginia law. He is expected to explain the reasons for his opinion and what he communicated to Mrs. Snoeyenbos.

    Mr. Flusche is expected to testify that based on his opinion about what he saw in the video, on April 8, 2019, Mr. Flusche emailed the Commonwealth Attorney a summary of the video. The commonwealth attorney elected to dismiss the charges on a motion of nolle prosequi, which Mr. Flusche will explain. The charges were dismissed on April 16, 2019. He charged and was paid $700 for the representation.

**Respectfully submitted,**
**REBECCA SNOEYENBOS**

By: \_/s/ Andrew T. Bodoh\_
Andrew T. Bodoh, Esq. (VSB 80143)
andrew.bodoh@robertslaw.org
**THOMAS H. ROBERTS & ASSOCIATES, P.C.**
105 South 1st Street
Richmond, Virginia 23219
Tel: 804-783-2000
Fax: 804-783-2105
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the November 7, 2019, I sent the forgoing to the following by email:

William F. Etherington (VSB # 14152)
Thomas N. Jamerson (VSB # 75035)
Greer Q. Drummond (VSB # 93479)
1001 Boulders Parkway, Suite 510
Richmond, VA 23225
(804) 788-1500
(804) 788-0135 (facsimile)
wetherington@bealelaw.com
tjamerson@bealelaw.com
gdrummond@bealelaw.com
*Counsel for Marcia Curtis*

By: \_/s/ Andrew T. Bodoh\_
Counsel

Andrew T. Bodoh, Esq. (VSB 80143)
andrew.bodoh@robertslaw.org
**THOMAS H. ROBERTS & ASSOCIATES, P.C.**
105 South 1st Street
Richmond, Virginia 23219
Tel: 804-783-2000
Fax: 804-783-2105
*Counsel for Plaintiff*